NOT FOR PUBLICATION                                              CLOSED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                            :
JOSE ROSARIO, doing business as             :
J&T TRAVEL, INC. and SANTO DOMINGO          :
CARGO                                       :
                                            :
            Plaintiff,                      :    Civ. No. 06-824 (JAP)
                                            :
    v.                                      :
                                            :    **OPINION**
H&M INTERNATIONAL TRANSPORTATION            :
SERVICE, INC. and SEABOARD LINES,           :
                                            :
            Defendants.                     :
_____:

PISANO, District Judge.

Plaintiff Jose Rosario, doing business as J&F Travel, Inc. and Santa Domingo Cargo ("Plaintiff" or Rosario"), brought this action seeking damages from Defendants H&M International Transportation Service, Inc. ("H&M International") and Seaboard Lines ("Seaboard") (together "Defendants") arising out of a motor vehicle accident which resulted in damage to a shipment of cargo destined for the Dominican Republic. Currently before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333 and decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the Court grants summary judgment in favor of Defendants and dismisses Plaintiff's Complaint.

## I. BACKGROUND[1]

Plaintiff, a New Jersey corporation with offices in New Brunswick, New Jersey and Santiago, Dominican Republic, is engaged in the business of, *inter alia*, arranging for the ocean transportation of shipments of household goods from the United States to the Dominican Republic. Defendant Seaboard is a Florida corporation with offices in Clark, New Jersey and Miami, Florida and is licensed by the United States Federal Maritime Commission ("FMC") as an ocean common carrier of merchandise in domestic and international commerce. Defendant H&M International, a New Jersey corporation headquartered in Jersey City, New Jersey, acts as a terminal operator, warehouseman, container freight station, and trucker for Seaboard. JJB Trucking Service Corp. & Shipping ("JJB Trucking"), which is not a party to this action, is an FMC-licensed ocean transportation intermediary, non-vessel operating common carrier, and ocean freight forwarder that operates out of Elizabeth, New Jersey.

Since 2001, Rosario has used JJB Trucking as its freight forwarder to coordinate the ocean transportation of shipments containing household goods from New Jersey to the Dominican Republic. JJB Trucking issues its standard form bill of lading for all ocean shipments that it arranges for Rosario. Consistent with that general practice, JJB Trucking issued a bill of lading to Rosario on November 3, 2004 for a container shipment of household goods destined for the Dominican Republic.

---

[1] Because Rosario has not filed a Statement of Undisputed Material Facts, as required by Local Civil Rule 56.1, the Court will consider all facts in Defendants' Rule 56.1 Statement as undisputed, unless controverted by the evidence or Plaintiff's brief. *Longoria v. New Jersey*, 168 F. Supp. 2d 308, 312 n.1 (D.N.J. 2001).

On or about October 26, 2004, JJB Trucking contacted Seaboard, with whom it has an ongoing business relationship, to request inland and ocean transportation of the subject shipment of household goods from New Jersey to the Dominican Republic.  Seaboard's Booking Confirmation, dated November 3, 2004, authorized JJB Trucking to pick up an empty 40-foot container from Seaboard's container yard in Kearney, New Jersey, for loading and delivery to H&M International's Kearney facility.  JJB Trucking picked up the empty Seaboard container and delivered it to Rosario, who loaded the container with various household goods, including food, clothing, and electronics.  On November 1, 2004, JJB Trucking delivered the container to H&M International's Kearney facility for drayage to Seaboard's marine terminal at the port of Philadelphia.  Seaboard then instructed H&M International to truck the container to the port of Philadelphia for loading upon Seaboard's vessel WASABORG/Voy. 65.  While en route to Seaboard's marine terminal at the port of Philadelphia, however, H&M International's truck was involved in a rollover accident.  The accident resulted in damage to some or all of the cargo in Plaintiff's shipment.

After the accident, H&M International returned the container and cargo to its Kearney facility and re-loaded the cargo into another Seaboard container.  On November 11, 2004, representatives from Seaboard, H&M International and Rosario performed an inspection of the cargo at H&M International's Kearney facility.  It is unclear whether some or all of the cargo was ultimately shipped to the Dominican Republic.  It is undisputed, however, that if the cargo had been loaded on the WASABORG/Voy. 65 as scheduled, Rosario would have received the cargo

in the Dominican Republic no later than November 30, 2004.[2]

On January 13, 2006, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Middlesex County asserting claims against Defendants for the damage caused to the cargo as a result of the accident. On February 23, 2006, Defendants removed the action to this Court, which has original admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and Federal Rule of Civil Procedure 9(h). Defendants now move for summary judgment on the grounds that Plaintiff's claim is time-barred by the one-year statute of limitations under The Carriage of Sea Goods Act ("COGSA"), 46 U.S.C. § 1300 *et seq*. In the alternative, Defendants argue that their liability in this case is limited to $500 pursuant to COGSA, JJB Trucking's bill of lading, and Seaboard's bill of lading.

## II. DISCUSSION

### A. *Standard of Review under Federal Rule of Civil Procedure 56(c)*

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue

---

[2] According to Seaboard's Booking Confirmation, the container holding the Rosario shipment was booked for loading onboard Seaboard's WASABORG/Voy. 65, which sailed from the port of Philadelphia on November 11, 2004, and arrived at the port of Boca Chica and discharged its cargo on November 19, 2004. Consistent with the port custom, the Dominican Republic Customs authorities took immediate custody of the cargo in order to inspect the contents and assess import duties. After inspection, which usually takes five or six days, Customs would have released Rosario's container shipments to its local employees.

of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to present evidence that a genuine fact issue compels a trial.  *Id.* at 324.  The non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party.  *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial.  *Anderson*, 477 U.S. at 249.  If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment.  *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### B.  Analysis

Although the accident occurred prior to loading the goods aboard a ship, Defendants argue that COGSA governs this dispute because Seaboard's bill of lading and published Tariff extend the provisions of COGSA to the entire transportation of the subject shipment.  Defendants further argue that this action is untimely under the COGSA one-year statute of limitations because Plaintiff filed its Complaint more than thirteen months after the date on which the goods would have been delivered to its employees in the Dominican Republic.  In the alternative, Defendants contend that their liability concerning the subject shipment is limited to $500 pursuant to the express terms of JJB Trucking's and Seaboard's bills of lading.

In its brief, Plaintiff focuses exclusively on Defendants' limitation of liability argument

and thereby fails to offer any argument—factual or legal—to refute Defendants' contention that this action is time-barred under COGSA. Nonetheless, the Court may not grant Defendants' motion for summary judgment unless the Court concludes that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law. Although Rosario, which did not submit a statement of material facts along with its legal brief, argues generally that there are issues of material fact, it fails to identify any specific disputed fact. Further, a review of the summary judgment record reveals that there are no genuine issues of material fact.

Turning to the relevant questions of law, Defendants' motion requires the Court to determine (1) whether COGSA applies to the entire transportation of the subject shipment; and (2) if COGSA does apply, whether Plaintiff's Complaint is untimely under the one-year statute of limitations. As explained below, the Court finds that COGSA is applicable to the entire transportation of Rosario's shipment and that Plaintiff's Complaint is untimely under the one-year statute of limitations. Accordingly, the Court need not address the limitation of liability issue.

**1. COGSA Applies to the Entire Transportation of the Subject Shipment**

COGSA applies to "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage by sea to or from ports of the United States, in foreign trade." 46 U.S.C. § 1300. By its terms, COGSA applies "tackle to tackle," meaning it "covers the period from the time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C. § 1301(e); *Oparaji v. N. E. Auto-Marine Terminal A.T.I., U.S.A., Inc.*, No. 04-6445, 2006 WL 1784469, at *6 (D.N.J. June 19, 2006). Parties may agree by contract, however, to extend the scope of COGSA to cover "the custody and care and handling of goods prior to the

loading on and subsequent to the discharge from the ship on which the goods are carried by sea." 46 U.S.C. § 1307; *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines, Ltd.*, 230 F.3d 549, 557 (2d Cir. 2000).

Prior to determining whether COGSA applies to the entire transportation of Rosario's shipment, the Court first must identify the contract of carriage. Although Seaboard did not issue a bill of lading for the subject shipment due to the accident, the parties do not dispute that Seaboard's standard bill of lading is the contract of carriage governing the subject shipment and the rights of the parties.[3] Seaboard's standard bill of lading, which it has routinely issued to Plaintiff's shipping agent (JJB Trucking) throughout the course of their business relationship, extends the provisions of COGSA to the pre- and post-loading periods. Indeed, the bill of lading contains a Clause Paramount which states:

> This Bill of Lading shall have effect subject to all the provisions of the Carriage of Goods by Sea Act . . . . The defenses and limitations of said Act shall apply to goods whether carried on or under deck, the carriage of goods between U.S. ports, or between non-U.S. ports, *before the goods are loaded on and after they are discharged from the vessel, and throughout the entire time the goods are in the custody of carrier, whether acting as carrier, trucker, warehouseman, bailee, stevedore or terminal operator* . . . .

(Declaration of Dennis Bogusz ("Bogusz Decl."), Ex. F) (emphasis added). Therefore, pursuant

---

[3] In addition to the fact that Plaintiff does not contest Seaboard's claim that its bill of lading is the contract of carriage, the Court notes that several courts have found that the bill of lading that a carrier would have issued, but never actually did, is controlling. *See Baker Oil Tools, Inc. v. Delta S.S. Lines, Inc.*, 562 F.2d 938, 940 n.3 (5th Cir. 1977) (finding that the carrier's standard bill of lading governed the rights of the parties even though no bill of lading was issued for the subject shipment); *Interflow (Tank Container Sys.) Ltd. v. Burlington N. Santa Fe Ry. Co.*, No. 04-2871, 2005 WL 3234360, at *6 (S.D. Tex. Nov. 29, 2005) ("[The carrier's] standard bill of lading applies, even though no bill of lading issued because the goods were never loaded."); *Am. Home Assurance Co. v. Hapag Lloyd Container Line, GMBH*, No. 03-5462, 2004 WL 1616379, at *3 (S.D.N.Y. July 19, 2004) ("[T]he Express Cargo Bill [that] would have issued for the [subject] shipment . . . governs the rights of the parties.").

to the terms of Seaboard's bill of lading, COGSA applies to the period during which the accident occurred.[4]

### 2. This Action Is Untimely Under COGSA

Under COGSA, a shipper has one year from the date of delivery, or expected delivery, to file suit against the carrier for loss or damage to the goods: "In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods *or the date when the goods should have been delivered* . . . ." 46 U.S.C. § 1303(6) (emphasis added). Further, Seaboard's bill of lading contains a clause adopting COGSA's one-year statute of limitations: "Notice of Claim - Time for Suit - Jurisdiction. . . . Carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of goods or the date when the goods should have been delivered . . . ." (Bogusz Decl., Ex. F).

In this case, Seaboard did not deliver Rosario's shipment as scheduled because of the accident. Thus, pursuant to both COGSA and Seaboard's bill of lading, the one-year statute of limitations began to run on the date when Rosario's shipment "should have been delivered" to its employees in the Dominican Republic. Plaintiff concedes that, had the shipment been transported as scheduled, its employees in the Dominican Republic would have received the goods no later than November 30, 2004. Rosario filed his Complaint on January 13, 2006, more

---

[4] Further, the freight forwarder bill of lading that JJB Trucking routinely issued directly to Rosario contained a clause extending COGSA to the entire transportation, including the period prior to loading the cargo aboard an ocean vessel. Because of its substantial course of dealing both with JJB Trucking and Seaboard, Plaintiff is charged with the knowledge that JJB Trucking's and Seaboard's standard bills of lading extended COGSA's coverage to include the entire transportation of Plaintiff's shipment.

than 13 months after the statute of limitations began to run. Therefore, Plaintiff did not comply with the COGSA one-year statute of limitations and the Court dismisses Plaintiff's claims against Seaboard as untimely.

Further, the Court concludes that Plaintiff's claims against H&M International are untimely due to the operation of a Himalaya Clause contained in Seaboard's bill of lading. A Himalaya Clause is a contractual provision that purports to extend liability limitations and, in this case, COGSA protections to downstream parties. *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 20 & n.2 (2004); *Bigge Equip. Co. v. Maxspeed Int'l Transport Co., Ltd.*, 229 F. Supp. 2d 968, 974 (N.D. Cal. 2001). Courts have honored these clauses where the entity seeking the protection of the Himalaya Clause is an intended beneficiary of its provisions. *See Bigge Equip. Co.*, 229 F. Supp. 2d at 974; *see also Chisso Am. Inc. v. M/V Hanjin OSAKA*, 307 F. Supp. 2d 621, 625 (D.N.J. 2003). "Whether an entity is an intended beneficiary of a Himalaya Clause depends upon the contractual relation between the party seeking protection and the ocean carrier, as well as the nature of the services performed compared to the carrier's responsibilities under the carriage contract." *Mori Seiki USA, Inc. v. M.V. Alligator Triumph*, 990 F.2d 444, 450 (9th Cir. 1993) (quotation omitted).

The Himalaya Clause in Seaboard's bill of lading states:

> If it shall be adjudged that any person other than the owner or demise charterer *(including the master, time charterer, agents, stevedores, warehousemen, lashers, truckers, watchmen, terminal operators and other independent contractors) is the carrier or bailee of the goods*, or is otherwise liable in contract or in tort, all rights, exemptions and limitations of liability provided by law and by the terms of this bill of lading shall be available to such other persons.

(Bogusz Decl., Ex. F) (emphasis added). Pursuant to the parties' contractual relationship, H&M

9

International serves as Seaboard's terminal operator, warehouseman, container freight station, and trucker. H&M International is thus an intended beneficiary of the Himalaya Clause. Further, there is no dispute that H&M International was performing its contractual duties at the time of the accident. The accident occurred while H&M International, acting as a carrier and bailee of the container, was transporting the container to the port of Philadelphia for loading upon a Seaboard vessel. Therefore, by operation of the Himalaya Clause, which unequivocally applies to H&M International, Plaintiff's claims against H&M International are subject to the COGSA one-year statute of limitations. As with Seaboard, Plaintiff first asserted its claims against H&M International on January 13, 2006, more than thirteen months after the statute of limitations began to run. Accordingly, the Court dismisses Plaintiff's claims against H&M International as untimely.

## III.  CONCLUSION

For the reasons expressed above, the Court grants Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. An appropriate order accompanies this opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  July 12, 2007